# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRAD THORNTON et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| HAMILTON SUNDSTRAND CORP., ) | |
| HONEYWELL INTERNATIONAL, INC., ) | |
| MATTHEW HIER, ) | No. 12 C 329 |
| and JEPPESEN SANDERSON, INC., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| AIRSERVICES AUSTRALIA, INC., ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Airservices Australia's and Plaintiffs' Motion for a good faith finding of its settlement with Plaintiffs pursuant to 735 ILCS 100/2 and to dismiss all claims against Airservices with prejudice. (R. 138) For the following reasons, the Court denies the Motion without prejudice.

## BACKGROUND

This case arises from a 2005 airplane crash near Lockhart River in Queensland, Australia. Plaintiffs bring wrongful death negligence and strict liability claims against Defendants Hamilton Sundstrand Corporation, Honeywell International Inc., Jeppesen Sanderson Inc., and Matthew Hier (collectively "Defendants"). Defendants, in turn, have

brought contribution and indemnity claims against Airservices Australia ("Airservices").

Plaintiffs are the representatives of decedents who were killed in the crash of a Fairchild SA227-DC Metro 23 Aircraft on May 7, 2005. (R. 111) Transair operated the flight as an Aero Tropics Airservices Flight from Bamaga to Cairns with an intermediate stop in Lockhart River, Australia. The decedents were all residents of Australia. (R. 155-1, Pls. Proposed Third Am. Compl. ("TAC") ¶ 3.) Hamilton Sundstrand Corp. ("Hamilton Sundstrand") is a Delaware corporation with its headquarters in Connecticut. (*Id.* ¶ 2.) Jeppesen Sanderson, Inc. ("Jeppesen") is a Delaware corporation with its headquarters in Colorado. (*Id.*; R. 1-4, Jeppesen Ans. & Counterclaims 25). Honeywell International, Inc. ("Honeywell") is a Delaware corporation with its principal place of business in New Jersey. Matthew Hier, an engineer manager for Hamilton Sundstrand, is a resident of Illinois. (TAC ¶ 2.) Airservices is a "statutory body corporate that is wholly owned by the Australian government" and which "provided aeronautical information for aircraft that fly into, out of or through the Australian Flight Information Region," or the "Australian airspace." (R. 71, Airservices Ans. to Claims of M7 Aerospace, LP ¶¶ 6,8.)

The Court assumes familiarity with the relevant facts as set forth in its July 24, 2013 Order. (R. 171.) Plaintiffs allege that Defendants Honeywell and Hamilton Sundstrand "designed, manufactured, assembled, and sold" a defective Ground Proximity Warning System ("GPWS") that operated in the aircraft and caused it to crash. (TAC ¶ 5) With respect to Jeppesen, Plaintiffs further allege that it "produced and sold certain charts for instrument approaches to Lockhart River Aerodrome, including charts for a Runway 12 RNAV (GNSS)

2

approach." (*Id.* ¶¶ 4-5.) In its third-party claims against Airservices, Jeppesen alleges that Airservices generated and distributed data, which Jeppesen "used to produce and sell charts for instrument approaches to the Lockhart River Aerodrome." (Jeppesen Ans. & Counterclaims at 26.) Hamilton Sundstrand and Honeywell allege that Airservices designed the approach to Runway 12 at Lockhart River Aerodrome, advised the Australian Transport Bureau of the redesign, and published a chart setting forth the redesign procedure. (Honeywell, Hamilton Sundstrand, and Matthew Hier's Third-Party Compl., R. 26-3, at ¶ 8.)

Airservices and Plaintiffs now move for a good faith finding by the Court of their proposed settlement pursuant to the Illinois Joint Tortfeasor Contribution Act ("IJTCA"), 740 ILCS 100/2, and to dismiss Airservices from the case. Defendants argue that because the law of Queensland, Australia, rather than Illinois, governs the effect of any settlement between Plaintiffs and Airservices on the third-party claims, the IJTCA does not apply. In the alternative, Defendants contend that even if Illinois law and the IJTCA applies, Airservices has not satisfied its burden of demonstrating that Airservices's proposed settlement with Plaintiffs is in good faith. The parties do not argue in this Motion that the laws of any other jurisdictions apply to this issue.

## ANALYSIS

### I. Applicability of Choice-of-Law Analysis

Airservices initially argues that the Court need not conduct a choice-of-law analysis to resolve its Motion. Instead, according to Airservices, because Plaintiffs invoke the Illinois Wrongful Death Statute in their claims and the proposed settlement agreement addresses those claims, Illinois law "inescapably" governs the effect of any settlement between Plaintiffs and

3

Airservices on Defendants' contribution claims against Airservices.

The IJTCA provides a right of contribution in actions "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death," 740 ILCS 100/1, 2(a) (West 1996), if a tortfeasor pays more than his pro rata share of the common liability. *See* 740 ILCS 100/2(b). Section 100/2(c) states:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

As is relevant here, Section 100/2(d) further provides:

> The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

Airservices's argument falls short for several reasons. Airservices provides no authority for the proposition that the IJTCA "by its terms controls the effect of a settlement of a claim asserted under the Illinois Wrongful Death Act." (R. 154, Airservices Reply 3 & n.3.) On the contrary, the plain language of the provision merely describes the effect of a good faith release or covenant, if any, on the liability of other tortfeasors with respect to torts arising from the "same injury or wrongful death." It does not require that the provision apply in all wrongful death suits. Moreover, other courts have reached a choice-of-law analysis in resolving a motion for a good faith finding. *See Matter of Colo. Springs Air Crash*, 867 F. Supp. 630, 634 (N.D. Ill. 1994). Accordingly, the Court will proceed to the choice-of-law inquiry.

4

## II. The Choice of Law Analysis

### A. A Conflict Exists Between the IJCTA and the Law of Queensland, Australia

The first step in the choice-of-law inquiry is to determine whether there is an actual conflict between the laws of the relevant jurisdictions. *See In re Aircrash Disaster Near Roselawn, Ind.*, No. 95 C 4593, 1997 WL 572897, at *1 (N.D. Ill. Sept. 9, 1997) ("[W]e need not decide choice of law questions unless there is a conflict between the laws of the various interested jurisdictions."). Thus, the Court must determine whether there is a conflict between Section 2(d) of the IJTCA and the law of Queensland, Australia.

It is well-established that the good-faith requirement of Section 2(d) of the IJCTA "extinguishes the contribution liability of the settling tortfeasor." *Johnson v. United Airlines*, 203 Ill. 2d 121, 128, 784 N.E.2d 812, 818 (Ill. 2003.) In contrast, Defendants argue that the law of Queensland, Australia does not discharge liability from a settling tortfeasor. Rather, a settling tortfeasor is still liable for contribution, but is entitled to a credit for the amount already paid. In support of their position, Defendants submit a declaration of the Honorable Richard Noel Chesterman, a retired justice of the Court of Appeal Division of the Supreme Court of Queensland. (R. 148, Chesterman Decl. ¶ 1.) Justice Chesterman avers that, under the law of Australia and Queensland, excluding Tasmania, a "settlement against one concurrent tortfeasor absolving it from further liability to the plaintiff will not defeat a claim for contribution by another defendant because the settling defendant would have been liable prior to the settlement." (*Id.* ¶ 7.) Defendants further cite case law and treatises supporting this proposition. *See, e.g.*,

*Harper v. Gray & Walker* [1985] 2 All ER 507;[1] Harold Luntz & David Hambly, Torts: Cases and Commentary, Australia, § 18.2.8 ("Outside Tasmania, a tortfeasor who has settled is exposed to a claim for contribution from a tortfeasor who is held liable by judgment, or settles later than the first, and believes that the first tortfeasor has not borne that tortfeasor's full share of the loss."). (Chesterman Decl. ¶¶ 7-13,15.) Airservices does not dispute these contentions. Therefore, for the purposes of this Motion, a conflict exists between Illinois and Australian law on the issue of whether a good-faith settlement discharges a settling tortfeasor's contribution liability to a non-settling tortfeasor.

### B. Applicable Choice-of-Law Rules

Because a conflict exists, the Court must next consider which choice-of-law rules apply in resolving this conflict. *See Roselawn*, 1997 WL 572897, at *1. For cases in which 28 U.S.C. § 1330 provides subject matter jurisdiction,[2] the Seventh Circuit has not squarely decided whether the forum state or federal common law choice of law rules govern. This question also remains unsettled among the other Circuits. *Compare Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 85 (2d Cir. 2002); *Oveissi v.*

---

[1] Although *Harper* is an English case, Defendants have provided Australian cases that implicitly recognize it as authority. *See, e.g.*, *Foster v. Woolworths Ltd.*, [2004] ACTSC 11, 2004 WL 3512798 (Sup. Ct. of the Australian Capital Territory); *Dimmah Invs. Pty. Ltd. v Chooka's Int'l Pty. Ltd.*, [2003] WASC 211 (Sup. Ct. Western Australia).

[2] The unique procedural posture of this case further complicates this question. On July 24, 2013, the Court determined that it has subject-matter jurisdiction over Defendants' claims against Airservices under the Foreign Sovereign Immunities Act. *See* 28 U.S.C. §§ 1330, 1605. The Court, however, had previously determined that it has diversity jurisdiction over Plaintiffs' claims against Defendants. (R. 42, Order Denying Pls. Mot. to Sever and Remand.) In addition, the choice-of-law issue here–the effect of a proposed settlement between Plaintiffs and Airservices–against which Plaintiffs have no claims pending– on Defendants' contribution rights against Airservices touches both jurisdictional bases.

*Islamic Republic of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009) ("We thus agree with the Second Circuit that applying the forum state's choice-of-law principles, rather than constructing a set of federal common law principles, better effectuates Congress' intent . . . in FSIA actions."); *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela*, 575 F.3d 491, 498 (5th Cir. 2009) ("Because this case arises under the FSIA, we apply the choice-of-law rules of the forum state."), *with Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003 (9th Cir. 1987) (applying federal common law choice-of-law rules). Nonetheless, because both federal common law choice of law rules and Illinois choice of law rules look to the Restatement (Second) Conflict of Laws, *see Berger v. AXA Network LLC*, 459 F.3d 804, 811 (7th Cir. 2006); *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 161, 879 N.E.2d 893, 901-02 (Ill. 2007), the Court need not decide this question at this stage.

## C. Restatement (Second) of Conflict of Laws

### 1. IJTCA Is Not a Statutory Choice-of-Law Directive

Section 6 of the Second Restatement provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) § 6. Section 6 then lists the factors courts should consider in the absence of such a statutory choice-of-law directive. Airservices contends that the IJTCA constitutes a statutory directive on choice-of-law that trumps other Restatement provisions.

This argument is unpersuasive for several reasons. First, the language of Section 102(d) of the IJTCA mentions nothing about choice of law. Airservices did not cite–nor did the Court find–any case law construing Section 102(d) of the IJTCA in this manner. The statute is also unlike those "rare" choice-of-law statutory directives that the Section 6 comments reference as

7

examples. *See* Restatement (Second) Conflict of Laws § 6(1) ("Restatement (Second)"), cmt. a,b. (noting a "court will rarely find that a question of choice of law is explicitly covered by statute"). As such, this argument fails.

  **2. Characterization**

Because there is no choice-of-law statutory directive on point, the Court turns to the remainder of the Second Restatement analysis. This inquiry begins with the question of "characterization," that is, the "classification of a given factual situation under the appropriate legal categories and specific rules of law, and (2) definition or interpretation of the terms employed in the legal categories and rules of law." *See* Restatement (Second) § 7, cmt. b.) Characterization involves application of the principle of depecage. *Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 (7th Cir. 1996). Depecage is the "process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis," by which the laws of two different jurisdictions may apply in same case. *Ruiz*, 89 F.3d at 324; *see Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 848 (7th Cir. 1999).³

With respect to characterization, Defendants invoke Section 173 of the Second Restatement, which addresses "contribution and indemnity among tortfeasors." Restatement (Second) § 173. Section 173 provides that "[t]he law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." Restatement (Second) § 173. Section 145, in turn, provides the general rule for tort

---

  ³ Accordingly, the Court's ruling as to the choice of law issue raised by the present Motion does not necessarily apply to other choice of law issues in this case or with respect to Plaintiffs' claims.

8

cases. Section 173 is the most appropriate section to apply here because the issue is the effect of a settlement agreement on Defendants' contribution rights against Airservices.

### 3. Section 145 - "Most Significant Relationship" Test

Under the Second Restatement, tort cases require application of the "most significant relationship" test. *See Abad v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009). Section 145 of the Restatement sets forth the test as follows: the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) § 145. Section 6 lists the following principles: (1) "the needs of the interstate and international systems;" (2) "the relevant policies of the forum," (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," (4) "the protection of justified expectations," (5) "the basic policies underlying the particular field of law," (6) "certainty, predictability and uniformity of result," and (7) "ease in the determination and application of the law to be applied." Restatement (Second) § 6. The comments specify that the importance of each of the factors varies depending upon the facts of the case and legal issues presented. *Id.* § 6, cmt. c.

### 4. Presumptively Applicable Law under Section 146

Before applying the Section 6 principles to determine which jurisdiction has the most significant relationship to the issue, however, a court must consider whether the "presumptively" applicable law governs. *See Townsend*, 227 Ill. 2d at 164 ("Generally speaking, then, the Second Restatement contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this

9

choice against the principles of § 6 in light of relevant contacts identified by general provisions like § 145 (torts) and § 188 (contracts)").

Here, Defendants contend that Section 146,[4] which governs personal injury actions, should supply the presumptive rule. (Defs.' Resp. 6.) Section 146 provides the following:

> The rule of this Section calls for application of the local law of the state where the injury occurred unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties. Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6.

Restatement (Second) § 146.

In determining whether a jurisdiction other than the place of injury has a more significant relationship, courts should consider "among other things, the purpose sought to be achieved by [the] relevant local law rules and of the particular issue." Restatement (Second) § 146, cmt. c. The Restatement further provides that the "likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." *Id.* Under Section 146, the presumptively applicable law is the law of Queensland, Australia. The accident in question is the crash of a domestic flight in Australia. The only genuine dispute is whether Illinois has a more significant relationship than Australia to the occurrence and the parties such that it overcomes the presumption in favor of Australian law

---

[4] The Court notes that were it to apply Section 175, which addresses wrongful death actions, the outcome would not change. Section 175 similarly applies the "most significant relationship" test and incorporates the presumptive place-of-injury rule of section 146. *See* Restatement (Second) § 175 & cmt. a ("the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied").

as that of the place of injury. It does not.

> 5. **Australia Has the Most Significant Relationship to the Parties and the Occurrence**

The Section 6 factors and the contacts identified in Section 145 for tort cases dictate whether Illinois overcomes the presumption in favor of Queensland law. *See id.* § 145. Section 145 provides the following contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See id.*

Here, the contacts with Australia are significant. The injury occurred in Australia, and all the decedents were Australian residents. In addition, nearly all of the special administrators and administrators of decedents' estates are citizens and residents of Australia.[5] Airservices is located in Australia and is owned by the Australian government. Furthermore, the parties do not contest in this Motion that the sale of the allegedly defective Jeppesen charts at issue to the Australian pilots of the aircraft, who are among the decedents in this case, occurred in Australia. By comparison, Illinois has few contacts to the parties and the occurrence. Although Plaintiffs have alleged that a number of Defendants do business in Illinois, they are incorporated in other states. (Pls.' TAC ¶ 2.)[6] In addition, the parties have not presented evidence that the relationship of the parties is otherwise "centered" in Illinois, apart from its status as the forum

---

[5] Plaintiff administrator Gillian Hurst is a citizen of the United States. (*See* R. 155-1, Pls.' TAC ¶ 1.)

[6] Although Matthew Hier, an individual employee of Hamilton Sundstrand allegedly resides and works in Illinois, his role thus far in the litigation has not been as central as those of the other Defendants.

state.

Viewing these contacts through the Section 6 factors, the presumption remains that Australia has the most significant relationship to the parties and the occurrence. In addition to the extensive contacts between the occurrence and the parties and Australia, Australia has an interest in the application of its law to the issue of the effect of any settlement between Plaintiffs–who are primarily citizens and residents of Australia–and Airservices, an entity owned by the Australian government that provides aeronautical information for entities flying in Australian airspace.

In contrast, Illinois does not have a strong interest in the application of the IJCTA to this issue, let alone one that would create a more significant relationship to the occurrence than Australia. In determining whether a state has an interest in the application of its law, courts look to the policy behind the law. *See Townsend*, 227 Ill. 2d at 170. The purposes of the IJTCA are to "encourage compromise and settlement in the absence of bad faith, fraud[,] or collusion" and to "allow[] for an equitable sharing of damages among tortfeasors according to their relative culpability." *Orejel v. York Int'l Corp., Inc.*, 287 Ill. App. 3d 592, 599, 678 N.E.2d 683, 688 (Ill. App. Ct. 1997). Accordingly,"[t]he 'good faith' of a settlement is the only limitation which the Act places on the right to settle." *Johnson*, 203 Ill. 2d at 128.

Cases applying the IJCTA to torts occurring outside of Illinois within the framework of the "most significant relationship" test are sparse. Generally, a jurisdiction will have an interest in applying its law to damages or other loss-allocation issues in a tort case in which the place of injury is outside the state when the tort victims are residents or domiciliaries of that state. *See, e.g.*, *Schoeberle v. United States*, No. 99 C 0352, 2000 WL 1868130, at *12 (N.D. Ill. Dec. 18,

2000) *aff'd and adopted*, 99 C 352, 2001 WL 292984 (N.D. Ill. Mar. 26, 2001) (applying law of decedents' domicile rather than law of place of injury to compensatory damages); *see Abad*, 563 F.3d at 669 (noting that "when the place of the accident is also the place in which the victims were injured and were resident . . . that offsets the argument that the jurisdiction of the defendant has an interest in regulating the conduct of its people and firms.").

Airservices has not alleged or argued that any of the parties to the proposed settlement have any connection to Illinois. Moreover, the parties have not relied on a theory that the injury-causing conduct occurred in Illinois. Indeed, the parties have argued throughout the case that the allegedly injury-causing conduct allegedly occurred in Washington–the location of the design and manufacture of the GPWS–or Colorado or Australia–the locations of conduct occurring in connection with Jeppesen's preparation of the navigation charts. (*See* R. 164, Hamilton Sundstrand Resp. to Pls. Mot. for Leave to File Am. Compl. 5-6; R. 168, 169, Defs.' and Airservices's Responses to Sua Sponte Order on FSIA Subject Matter Jurisdiction.) Thus, Illinois does not have a sufficient interest in encouraging Airservices to settle with Plaintiffs by preventing Defendants from seeking contribution liability against Airservices. *Compare Matter of Colo. Springs Air Crash*, 867 F. Supp. at 636 (noting Illinois's strong policy in encouraging settlement, "*when coupled with the other significant contacts Illinois has with this case* [including that one of the defendant's principal place of business was Illinois], compels the application of Illinois' contribution statute in this case."). Even if Illinois did have some interest in applying the IJTCA to the effect of the settlement, given the extensive contacts and connections to Australia, it would not be strong enough to tip the balance of the most significant relationship test in favor of Illinois. *See Abad*, 563 F.3d at 669-70 ("[I]n the absence of unusual

circumstances, the highest scorer on the 'most significant relationship' test is the place where the tort occurred.").

In opposing the application of Australian law, Airservices relies largely on the logic that because Plaintiffs have brought claims under the Illinois Wrongful Death Act, Illinois law should also govern any issues involving the third-party contribution claims. That position is not consistent with the Restatement principle of depecage, by which "[a]ll issues in tort need not be governed by a single law." *See Schoeberle*, 2000 WL 1868130, at *3 ("[U]nder the doctrine of depecage, it is not uncommon for courts to apply the substantive law of several different states in resolving air crash cases.") (quoting *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 926 F. Supp. 736, 740 (N.D. Ill. 1996)). Nor do the handful of cases Airservices cite, in which the courts happen to apply the same law to the contribution issue as the underlying claim, stand for the broader proposition that the Restatement favors this approach. Rather, the thrust of these cases is that the respective interests of states vary with the application of the Restatement factors to a particular case. *See Palmer v. Freightliner, LLC*, 889 N.E.2d 1204, 1212, 383 Ill. App. 3d 57, 66 (Ill. App. Ct. 2008) (holding Illinois rather than Ohio law applied to issue of whether workmen's compensation payment to plaintiff immunized third-party defendant from further contribution liability on a manufacturer for injury occurring at a Illinois facility pursuant to contract performed in Illinois in light of Illinois policy in favor of allowing contribution); *Mech v. Pullman Standard*, 136 Ill. App. 3d 939, 943, 484 N.E.2d 776, 779 (Ill. App. Ct. 1984) (applying Indiana rather than Illinois law to contribution and indemnity issues when Illinois contacts were only "that the forum court and Pullman's principal place of business are located there and Steel Builders, an Indiana corporation, does business in that state").

Nor does *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023, 1034, 738 N.E.2d 964, 973 (Ill. App. Ct. 2000), in which an Illinois court applied a provision of the IJTCA to a tort occurring in Indiana, point to the application of Illinois law in these circumstances. In *Wreglesworth*, an Illinois appellate court considered the issue of whether Indiana or Illinois law governed the effect of a release from liability in connection with a watercraft collision occurring in Indiana. In holding that Illinois law governed, the court noted that while Indiana was the place of injury and residency of the owner of the watercraft, "[o]f far more importance to [the] issue [was] that the release was executed in Illinois, and that three of the four parties who were named . . . were either domiciled or headquartered in Illinois, which thus has an obvious interest in how such a release is to be interpreted."). *See* 316 Ill. App. 3d at 1034. Here, Airservices has not made clear whether the parties intend to execute the settlement agreement in Illinois. Regardless, Airservices has not alleged or argued that any of the representatives are residents of Illinois.[7]

In addition to the interests of the respective jurisdictions, the other relevant Section 6 factors weigh in favor of the application of Australian law. It is not clear how the needs of the international system would favor the application of Illinois law to the settlement of an accident so clearly centered in Australia. As the parties have represented in other filings in this case, the crash was one of the largest disasters in Australian history, and the Australian Transportation Safety Bureau has led an extensive investigation of the accident. (*See* R. 164.) Although all of the defendant companies are incorporated or have their principal places of business in the United

---

[7] Even if there were some minimal connection to Illinois with respect to the representatives, that would not override Australia's interest in the application of its law.

States, it is not clear why Illinois law in particular should apply, especially when none of the corporate defendants are incorporated or have their principal place of business here. Indeed, the only factor favoring Illinois law is the ease of its application in comparison to Australian law. That factor alone, however, is insufficient to override Australia's significant relationship to the occurrence with respect to this issue. Therefore, the Court finds that the law of Queensland, Australia governs the effect of any settlement between Airservices and Plaintiffs on Defendants' third-party contribution and indemnity claims against Airservices.

Nonetheless, this holding does not preclude the Court from determining whether Airservices' entered the proposed settlement with the Plaintiffs in good faith. The Court cannot, however, as a result of any such determination, apply the IJTCA to dismiss the third-party claims against Airservices. If the parties should wish the Court to make such a finding based upon other authority, it may renew its motion.

## CONCLUSION

For the foregoing reasons, the Court denies without prejudice Airservices's and Plaintiffs' Motion for a Good Faith Finding.

**Date: August 6, 2013**

                                                        **ENTERED**

                                        AMY J. ST. EVE
                                        United States District Court Judge