| | | |
|---|---|---|
| TRAD THORNTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAMILTON SUNDSTRAND CORP., | ) | No. 12 C 329 |
| HONEYWELL INTERNATIONAL, INC., | ) | |
| MATTHEW HIER, and | ) | Judge Sara L. Ellis |
| JEPPESEN SANDERSON, INC. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AIRSERVICES AUSTRALIA, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## OPINION AND ORDER

This suit involves the crash of a commuter airplane in Queensland, Australia in May of 2005 that killed all fifteen individuals onboard. Plaintiffs, as administrators and special administrators of the estates of fourteen of the deceased, sued Defendants for their alleged roles in the crash. Defendants seek summary judgment via four separate motions. The Court grants summary judgment in favor of all Defendants.

Defendant Jeppesen Sanderson Inc. ("Jeppesen") seeks summary judgment on all claims against it, asserting that Plaintiffs have not established a *prima facie* case that its navigational chart contributed to the cause of the crash. Because there is no evidence properly before the Court that Jeppesen's chart probably contributed to the cause of the crash, the Court grants Jeppesen's motion for summary judgment [197].

Defendants Hamilton Sundstrand and Matthew Hier also seek summary judgment on all claims against them, asserting that they cannot be held liable for any alleged defects in the plane's ground proximity warning system ("GPWS") computer because Hamilton Sundstrand sold its GPWS business to Honeywell International, Inc. ("Honeywell") in 1993, seven years before the purchase of the GPWS computer allegedly onboard the aircraft. For the same reason, Hamilton Sundstrand and Mr. Hier argue that they cannot be liable for failing to advise the operator of the aircraft, Australian airline Transair, that a superior product was available. Because the evidence does not reveal that the GPWS unit was defectively designed and because Hamilton Sundstrand and Mr. Hier owed no duty to warn of the existence of a superior product about which Transair already knew or after Hamilton Sundstrand exited the industry, the Court grants Hamilton Sundstrand and Mr. Hier's motion for summary judgment [186].

In a separate motion, Defendants Hamilton Sundstrand and Honeywell move for summary judgment on all claims against them, arguing that there is no evidence that any defect in the design or manufacture of the GPWS computer contributed to the cause of the crash and that they owed no duty to advise Transair of the existence of a superior product. Because Plaintiffs' claims of defect are not supported by any evidence properly before the Court and because Honeywell likewise owed no duty to inform Transair of a product of which it was already aware, the Court grants Hamilton Sundstrand and Honeywell's motion for summary judgment [188].

Finally, all Defendants seek summary judgment against seven Plaintiffs (representing six decedents) on the basis that those Plaintiffs are barred from suing because representatives of those decedents already recovered from Transair in a suit in Queensland. Because the Court

grants the above motions for summary judgment in their entirety, the Court declines to substantively rule on this motion [184].

In addition to the motions for summary judgment before the Court, Plaintiffs seek leave to appeal the Court's April 2014 order denying their motion for remand. Because this opinion grants summary judgment on all claims, Plaintiffs no longer require leave to appeal the Court's rulings. Therefore, the motion for leave to file an interlocutory appeal [266] is denied as moot.

## BACKGROUND

On May 7, 2005, a Metro 23 commuter plane operated by Transair departed from Bamaga for Cairns with an intermediate stop in the Lockhart River Aerodrome in Queensland, Australia. While descending toward the Lockhart River, the airplane crashed into a ridge killing both pilots and all thirteen crew onboard.

The flight path into Lockhart River Runway 12 required the aircraft to descend over South Pap, a ridge that rises approximately 1,450 feet above sea level less than seven miles north of the runway. Because cloud cover did not allow the flight crew to make a visual approach into Runway 12, the pilots used an RNAV instrument approach. An RNAV instrument approach is a non-precision approach using cockpit instruments, including a global positioning system, to navigate from waypoints along a pre-planned flight path. Australian aviation authorities require both pilots to obtain RNAV certification before a flight is authorized to make an RNAV instrument approach into Lockhart River. Co-pilot Timothy Down lacked RNAV endorsement at the time of the crash.

Jeppesen and third-party Defendant Airservices Australia ("ASA") both produce and sell charts for pilots to use while performing instrument approaches into the Lockhart River Aerodrome. ASA, which is wholly owned by the Australian government, designed the approach

procedure into Lockhart River and provided Jeppesen with source data for its approach charts. The pilots of the aircraft subscribed to Jeppesen's chart service, but it is not clear that the pilots actually used Jeppesen's chart while descending into Lockhart River on the day of the crash. Jeppesen's approach chart included an overhead view and a profile view of the prescribed flight path. The chart indicated the descent angle, the location of various waypoints along the descent path, and the minimum altitude at any point along the path into Lockhart River. Jeppesen's chart did not, however, indicate the topography of the terrain below the descent path. The aircraft descended at a steeper angle than prescribed in Jeppesen's chart and flew below the 2,060-foot minimum safe altitude for its location. The aircraft crashed into the South Pap ridge at an altitude of approximately 1,210 feet, still above the cloud line.

A GPWS computer is designed to alert the crew of an "excessive closure rate to terrain." Doc. 194 at ¶ 26. In 2003, the aircraft was equipped with a GPWS computer manufactured by Honeywell, model MK VI, unit number 2767. Honeywell manufactured GPWS unit 2767 in 2000. However, investigators could not identify a GPWS computer in the aircraft's wreckage. Hamilton Sundstrand began designing MK VI GPWS computers in 1990, but sold its GPWS business to Honeywell in 1993. In the sale agreement, Honeywell agreed to take on all liabilities incurred related to the GPWS business after the date of sale. After the purchase, Honeywell continued to manufacture MK VI GPWS computers, while Hamilton Sundstrand ceased operating in the GPWS business.

In light of advancements in terrain mapping technology and global positioning systems, the Australian Civil Aviation Safety Authority mandated installation of an Enhanced GPWS computer ("EGPWS," also known as Terrain Awareness Warning System or "TAWS") in all aircraft with ten or more passenger seats by June 30, 2005. The EGPWS or TAWS computers

improved on GPWS computers by utilizing a forward-looking terrain sensor, therefore alerting pilots to potential hazards earlier than a GPWS computer would do. In 1999, Transair wrote to the Australian Civil Aviation Safety Authority of its intention to install a "predictive GPWS" computer in its aircraft by January 1, 2001. Doc. 194 ¶ 72. By April of 2005, Transair had taken steps to install Sandel brand TAWS computers on all of the company's Metro 23 aircraft. But no TAWS or EGPWS computer was installed on this particular aircraft prior to the accident.

The Australian Transport Safety Board ("ATSB") and the government of Queensland investigated the potential causes of the accident and each published a detailed report. The ATSB Report concluded, and the parties agree, that the plane crashed as a "result of a controlled flight into terrain; that is, an airworthy aircraft under the control of flight crew was flown unintentionally into terrain, probably with no prior awareness by the crew of the aircraft's proximity to terrain." ATSB Report at xiii.[1] The ATSB could not determine why the aircraft flew into the ridge, largely because the plane's cockpit voice recorder failed to record any audio from the cockpit, everyone aboard the plane died, and there was no air traffic controller or other witness in the area. The ATSB Report identified several "contributing safety factors," ATSB Report at 235–37, and several more "other safety factors," *id.* at 237–39. The "contributing safety factors" were issues that the ATSB concluded to a likelihood of more than 66 percent contributed to the cause of the crash. These factors included: the crew's decision to make an RNAV instrument approach without being endorsed to do so; the plane's descent speed, rate of descent, and altitude; the crew's elevated workload during approach; and factors related to Transair's and the Australian Civil Aviation Safety Authority's ("CASA") processes. The ATSB Report defined "other safety factors" as less significant than the "contributing safety factors," but

---

[1] Apparently due to electronic document filing size limitations, Jeppesen filed the ATSB Report on the case docket in four pieces, documents 201-1 through 201-4. For clarity, the Court will refer to the page numbers as assigned in the Report.

"still considered to be important to communicate." *Id.* at 237. The "other safety factors" included: the pilots' lack of training, endorsements, or experience; the fact that the approach path led to GPWS alerts even at safe altitudes; that Jeppesen's approach chart could cause a pilot to lose situational awareness; and other factors related to Transair's and the CASA's processes.

Diversity jurisdiction is satisfied based on the following facts: Jeppesen is a Delaware corporation with its principal place of business in Colorado. Hamilton Sundstrand is a Delaware corporation with its principal place of business in Connecticut. Defendant Matthew Hier is an employee of Hamilton Sundstrand and a resident of Illinois. Honeywell is a Delaware corporation with its principal place of business in New Jersey. Hamilton Sundstrand and later Honeywell designed and manufactured GPWS computers in Washington. All Plaintiffs reside in Australia, with the vast majority residing in Queensland; the decedents all resided in Queensland when the accident occurred.

Plaintiffs originally brought this action in the Circuit Court of Cook County, Illinois in May of 2007. In 2011, Defendants Honeywell, Hamilton Sundstrand, Jeppesen, and Mr. Hier filed a third-party complaint against ASA. The third-party complaint sought contribution against ASA for its role in the crash. ASA exercised its right as a foreign sovereign to remove the entire action to federal court under the jurisdictional provision of the Foreign Sovereign Immunities Act. Plaintiffs have repeatedly sought to return the case to state court by way of remand or voluntary dismissal and re-filing, but the Court has denied each of these requests. Plaintiffs most recently sought to remand the case in February of 2014. The Court denied this motion [264, 265]. Plaintiffs then sought leave to immediately appeal this ruling [266].

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.      Jeppesen's Motion for Summary Judgment

Jeppesen moves for summary judgment asserting that Plaintiffs do not offer sufficient evidence to show that its navigational chart caused or contributed to the cause of the crash. Jeppesen argues that the crash occurred because the flight crew failed to follow the instructions on the Lockhart River approach chart. Defendants hypothesize that the flight crew may have intentionally disregarded the RNAV approach path and flown below the minimum safe altitude in an effort to make a visual approach. Jeppesen points out that because there are no surviving

witnesses or a functioning cockpit voice recorder, Plaintiffs could not possibly prove Jeppesen's liability to a jury. In the absence of any evidence, Jeppesen contends that Plaintiffs have failed to satisfy their burden.

In response, Plaintiffs contend that Jeppesen's navigational chart was not clear and thereby contributed to the cause of the crash. Although acknowledging that Jeppesen's approach chart was accurate and that ASA mandated the information in the chart, Plaintiffs point to several purported deficiencies in the chart, including the failure to depict terrain below the flight path, the choice of certain type faces and font sizes on the chart, the failure to more clearly depict features such as the distance from various waypoints to the missed approach point, and the failure to clearly portray the six-degree offset between the final approach track and the runway. Plaintiffs draw these criticisms from the ATSB Report. But the ATSB Report did not list Jeppesen's chart among the safety factors that probably contributed to the cause of the crash.[2] Plaintiffs theorize that Jeppesen's chart confused the flight crew and contributed to the crew's already high workload. This, Plaintiffs surmise, caused the crew to lose situational awareness and unknowingly descend below the minimum safe altitude, ultimately leading the plane to crash into the South Pap ridge.

Plaintiffs, however, do not respond to Jeppesen's Rule 56.1 statement of undisputed facts. As a result, those facts are deemed admitted. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). Nor do Plaintiffs file their own Rule 56.1 statement of facts in response to Jeppesen's—or any other Defendant's—motion for summary judgment. Instead, Plaintiffs attach four purported expert affidavits to their response to Jeppesen's motion

---

[2] In order to classify any factor as "probable," the ATSB required a 66 percent likelihood that the factor contributed to the cause of the accident.

for summary judgment. These affidavits are not properly before the Court. *See Hoosier v. Greenwood Hospitality Mgmt. LLC*, --- F. Supp. 2d ----, 2014 WL 1245112, at *2 (N.D. Ill. Mar. 26, 2014) (finding that plaintiff's affidavits attached to her response to defendant's motion for summary judgment were not properly before the court because plaintiff failed to file a Local Rule 56.1 statement of additional facts). Jeppesen has not had a chance to properly respond to Plaintiffs' expert affidavits, as required by Local Rule 56.1. *Id.*; *see also FirstMerit Bank, N.A. v. Frasca*, No. 13 C 3, 2013 WL 6670819, at *1 (N.D. Ill. Dec. 17, 2013) ("Facts argued in briefs but not included in a party's statement of undisputed facts are not considered by the Court, because to do so would rob the other party of his or its opportunity to show such facts are disputed."). Thus, the only facts properly before the Court on this motion are those presented in Jeppesen's Rule 56.1 statement of facts. Additional factual assertions made by Plaintiffs in their response memorandum and in the attached affidavits are disregarded. *See Gray v. Ghosh*, No. 12 C 194, 2013 WL 5497250, at *5 (N.D. Ill. Oct. 3, 2013) (collecting cases).

The undisputed facts before the Court state that the flight crew was familiar with the Lockhart River approach and had previously landed at Runway 12 via an RNAV instrument approach, deviated significantly from the descent path outlined in the Jeppesen chart, descended more than 800 feet below the minimum safe altitude prescribed by ASA and identified in the Jeppesen chart, exceeded the recommended approach speed by 44 knots, and flew faster and descended more rapidly than the Transair operations manual provided. Additionally, the flight crew was not authorized to perform an RNAV instrument approach because the co-pilot was not certified to perform such a landing.

Plaintiffs do not challenge the accuracy of the Jeppesen navigational chart.[3] The only evidence properly before the Court that might support Plaintiffs' position is the April 2007 ATSB Report. The ATSB noted several "limitations" in Jeppesen's approach chart, including "distance information, alignment between plan-view and profile-view, use of font, offset depiction, and terrain depiction." ATSB Report at 216. But the ATSB concluded that "[t]he extent to which any of these specific issues influenced the crew's workload and situational awareness on the accident flight could not be reliably determined." *Id.*

Before discussing Jeppesen's chart, the ATSB Report identifies several "contributing safety factors" that "probably" contributed to the cause of the crash. These "contributing safety factors" focus on the flight crew's performance and its decision to attempt a landing procedure that it was not endorsed to perform. *Id.* at 235–37. The Report highlights the crew's lack of training, and the increased workload of landing via an RNAV instrument approach. The ATSB also identifies as contributing safety factors Transair's failure to demonstrate a high commitment to safety and CASA's insufficient guidance and oversight. The Report then lists several "other factors" that the ATSB concludes were less likely to have caused the crash. Among these, the ATSB again cites the crew's lack of experience and deficiencies in Transair's and CASA's processes. In this context, the ATSB also identifies certain aspects in the Jeppesen approach chart "that could lead to pilot confusion or reduction in situational awareness." *Id.* at 238.

Taking the ATSB Report as a whole, in the context of all the evidence before the Court, and even when viewed in the light most favorable to Plaintiffs, the ATSB's statements regarding Jeppesen's approach chart do not create a question of fact regarding Jeppesen's liability

---

[3]    Nor do Plaintiffs submit evidence that the pilots actually used a Jeppesen chart as they descended into Lockhart River on May 7, 2005. However, Jeppesen acknowledges that the pilots subscribed to its chart service and the ATSB concluded it was "very likely" that the crew was using a Jeppesen chart while descending into Lockhart River on the day of the crash. ATSB Report at 1.

sufficient to survive a motion for summary judgment. The ATSB Report does not express any opinion nor provide any evidence that Jeppesen's navigational chart actually contributed to the crash. Instead, Plaintiffs speculate that the navigational chart may have contributed to the crash. Such speculation is not sufficient under Illinois law.[4] *See Hudson v. Twenty-Three E. Adams St. Corp.*, 787 F. Supp. 141, 146 (N.D. Ill. 1992) ("This lack of evidence positively connecting the defendants to the plaintiff's injury would render any verdict for the plaintiff a product of mere speculation, or a conclusion deduced by surmise and guess work."); *Gyllin v. Coll. Craft Enter., Ltd.*, 633 N.E.2d 111, 117, 260 Ill. App. 3d 707, 198 Ill. Dec. 649 (1994) ("While circumstantial evidence is sometimes acceptable to prove causation, liability cannot be based on mere speculation, guess, or conjecture."). Although Plaintiffs are not required to exclude all other causal explanations, *Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 211 (7th Cir. 1994), Plaintiffs can withstand summary judgment only if they establish that the purported deficiencies in Jeppesen's chart *probably* contributed to the cause of the crash, *see Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992); *Hudson*, 787 F. Supp. at 145–46 ("'[T]he circumstances must justify an inference of probability rather than mere possibility.'" (quoting *Snell v. Vill. of Univ. Park*, 542 N.E.2d 49, 52, 185 Ill. App. 3d 973, 134 Ill. Dec. 49 (1989))). Because Plaintiffs have not properly submitted any evidence to allow a reasonable jury to conclude that Jeppesen's navigational chart probably contributed to the cause of the crash, the Court grants summary judgment in favor of Jeppesen.

---

[4]   Jeppesen asserts, and Plaintiffs do not contest, that Illinois law governs this question because there is no conflict between federal, Illinois, and Queensland law on the issue. Therefore, the Court applies Illinois law to Jeppesen's motion for summary judgment. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state.").

**II.     Hamilton Sundstrand and Matthew Hier's Motion for Summary Judgment**

Hamilton Sundstrand also seeks summary judgment on all claims against it, arguing that it cannot be liable to Plaintiffs for any alleged failure or deficiency of the GPWS computer onboard the airplane because Hamilton Sundstrand sold its GPWS business to Honeywell in 1993 and did not manufacture the GPWS unit in the aircraft.  Hamilton Sundstrand argues that it cannot be held liable under a product liability theory because it did not participate in the production or sale of the allegedly defective product, or under a negligence theory because it owed no duty to Transair or to any Plaintiff.  Mr. Hier, a Hamilton Sundstrand employee, seeks summary judgment on the failure to warn claims against him because, for any number of reasons, he had no duty to warn Transair of any deficiency in the GPWS computer or of the superiority of an EGPWS unit.

Plaintiffs respond by arguing that Hamilton Sundstrand admitted that it manufactured the subject GPWS computer in a December 2007 state court filing.  Plaintiffs further assert that that even if Hamilton Sundstrand did not manufacture the GPWS computer in question, it may still be liable for defective design because it designed the MK VI model of GPWS computers in 1990.  Plaintiffs contend that Hamilton Sundstrand is also liable under a negligence theory because the purported defects were inherent to the design of the MK VI GPWS and applied to all units thereafter manufactured, regardless of the manufacturer.  Finally, Plaintiffs assert that both Mr. Hier and Hamilton Sundstrand are liable for negligently failing to warn purchasers of the GPWS that a better product—the EGPWS or TAWS—was available.[5]

---

[5]     Plaintiffs argue that because Defendants challenged the failure to warn claims in a motion to dismiss, which the state court denied, Hamilton Sundstrand and Mr. Hier are barred from moving for summary judgment on these claims and that the prior ruling constitutes law of the case.  The Court disagrees.  "The law-of-the-case doctrine binds a court only where a court's order was final. . . .  The denial of a motion to dismiss is an interlocutory order."  *Commonwealth Edison Co. v. Ill. Commerce Comm'n*, 858 N.E.2d 65, 76–77, 368 Ill. App. 3d 734, 306 Ill. Dec. 620 (2006).  A denial of a motion to

The Court finds Plaintiffs' arguments unconvincing. Plaintiffs again do not submit a statement of undisputed facts, nor do they respond to Defendants' statement of undisputed facts. On its own, this is all but fatal to Plaintiffs' claims. At this stage, Plaintiffs cannot rely on mere assertions from their complaint, *Celotex Corp.*, 477 U.S. at 324; rather, they are required to support those assertions with facts properly before the Court via a Rule 56.1 statement, *Gray*, 2013 WL 5497250, at *5. By failing to respond, all facts identified in Hamilton Sundstrand and Mr. Hier's joint statement of facts are deemed admitted. *Smith,* 321 F.3d at 683 ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). Plaintiffs cannot support their position with facts asserted in their response brief. *See Gray*, 2013 WL 5497250, at *5.

## A.     Governing Law

The parties disagree about which law governs Plaintiffs' claims against Hamilton Sundstrand. Plaintiffs contend that because the laws of Washington and Illinois do not conflict, the Court should apply Illinois law to Plaintiffs' claim against Hamilton Sundstrand. Hamilton Sundstrand contends that Washington law governs claims against it because the relevant conduct—the design of the GPWS unit—occurred exclusively in Washington. Hamilton Sundstrand further asserts that Washington law and Illinois law conflict because the Washington Products Liability Act permits claims only against a product manufacturer or a product seller.[6] Because Hamilton Sundstrand merely designed the MK VI GPWS, it argues that it was neither a

---

dismiss does not preclude the Court from considering the same argument on summary judgment. *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 109 (7th Cir. 1986).

[6] With regard to the motions for summary judgment on behalf of Hamilton Sundstrand, Mr. Hier, and Honeywell, no party advocates applying Queensland law. Therefore, the Court need not consider whether to apply Queensland law when ruling on these motions. *See Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) (applying forum law where neither party advocated applying another state's law or identified a conflict between forum law and the out of state law); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

manufacturer nor seller under the Washington statute.  Hamilton Sundstrand relies on the

Washington statute's definition of a product "manufacturer," which states: "'[m]anufacturer'

includes a product seller who designs, produces, makes, fabricates, constructs, or remanufactures

the relevant product or component part of a product before its sale to a user or consumer."

Wash. Rev. Code § 7.72.010(2).  Hamilton Sundstrand asserts that although the definition of

"manufacturer" includes those who design products, the definition is limited to product sellers.

Hamilton Sundstrand does not cite any cases for the proposition that Washington law does not

allow claims for defective design.  *Cf. Spokane Sch. Dist. No. 81 v. Nw. Bldg. Sys., Inc.*, No. CV-

04-0078-MWL, 2006 WL 696282, at *9 (E.D. Wash. Mar. 13, 2006) ("In order to establish a

claim for defective design under the Washington Product Liability Act, the plaintiff must show:

(1) a manufactured product (2) was not reasonably safe as designed and (3) caused harm to the

plaintiff.") *aff'd*, 253 F. App'x 688 (9th Cir. 2007).

    While the Court ultimately agrees with Hamilton Sundstrand that Plaintiffs' defective

design claims fail, the Court is not convinced that Washington bars all claims against product

designers.  The Court finds that Washington and Illinois law do not conflict on this point.

Absent conflict, the Court will apply the substantive law of the forum state, which in this case is

Illinois.  *See Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)

("before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that

there actually is a difference between the relevant laws of the different states"); *see also

Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, --- N.E.3d ----, 2014 IL

116389, at *6 (May 22, 2014) (clarifying that actual conflict is required before a court may

undergo a choice of law analysis).

**B.     Defective and Negligent Design**

In trying to hold Hamilton Sundstrand liable for any defects in the GPWS computer onboard the aircraft, Plaintiffs first assert that Hamilton Sundstrand previously admitted to manufacturing the subject unit. The Court disagrees. Rather, in a joint motion to dismiss for *forum non conveniens* in Illinois state court in 2007, Defendants clumsily summarized the pleadings while identifying the American connections to the case. The 2007 brief states, "at the time of the crash the aircraft was equipped with a GPWS that was designed and manufactured in Washington state by a predecessor of one defendant, Hamilton Sundstrand Corporation." Doc. 228-1 at 5. Later in the same filing, Defendants state the U.S. connections to the case more thoroughly, noting that "[t]he *Complaint alleges* that Hamilton-Sundstrand 'designed, manufactured and assembled' the GPWS." *Id.* at 12 (emphasis added).

A statement may be construed as a binding judicial admission only if it is "deliberate, clear, and unequivocal." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997). The statement in Defendants' 2007 brief is none of these, especially in light of the context. The undisputed statement of facts makes clear that Honeywell manufactured the GPWS unit that was installed on the aircraft. Plaintiffs recognize as much, by suing Honeywell for manufacturing the GPWS computer. Therefore, the statement in Defendants' 2007 brief cannot serve as a binding judicial admission that Hamilton Sundstrand manufactured the GPWS computer in question.

Next, Plaintiffs seek to hold Hamilton Sundstrand strictly liable for defectively designing the MK VI GPWS computer, even if it did not manufacture the unit at issue. Hamilton Sundstrand responds that it cannot be held strictly liable because it merely designed the model,

and sold its GPWS business to Honeywell years before the unit onboard the aircraft was manufactured. The Court finds that Plaintiffs cannot prevail under Illinois law.

The Court seriously doubts that any evidence could show that Hamilton Sundstrand was liable for designing the MK VI GPWS computer onboard the aircraft. Hamilton Sundstrand sold its entire GPWS business in 1993, seven years before this product was manufactured. *See Potwora ex rel. Gray v. Grip*, 725 A.2d 697, 703, 319 N.J. Super. 386 (N.J. Super. Ct. App. Div. 1999) (refusing to impose strict liability on a predecessor who had "lost the ability to spread the risk of producing the product to the consumers of that product"). Additionally, the sale contract between Hamilton Sundstrand and Honeywell outlined that Honeywell would be liable for any damages related to GPWS units sold after 1993. *See Kessinger v. Grefco, Inc.*, 875 F.2d 153, 155 n.4 (7th Cir. 1989) (noting that where a defendant sold its business to a successor who expressly assumed future liabilities, Illinois law would entitle the defendant to summary judgment); *see also Diguilio v. Goss Int'l Corp.*, 906 N.E.2d 1268, 1277, 389 Ill. App. 3d 1052, 329 Ill. Dec. 657 (2009) (noting that a predecessor may limit its liabilities arising from product liability suit via contract with its successor). After the sale to Honeywell, Hamilton Sundstrand did not receive any royalties on future sales of GPWS units and therefore did not participate in the stream of commerce related to the GPWS unit on the aircraft. *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 745 (7th Cir. 2007) (refusing to impose strict liability on an installer partly because it did not receive any profit from the sale of the product).

But even setting aside the tenuous nature of Plaintiffs' product liability claims against Hamilton Sundstrand, Plaintiffs have offered no evidence that the GPWS computer question was defectively designed. Apparently misunderstanding the standard on summary judgment, Plaintiffs state throughout their response brief that "[P]laintiffs *allege* the Hamilton Sundstrand

Mark VI GPWS was defective from the time of its initial design." Doc. 227 at 4 (emphasis added). At this stage it is not sufficient for Plaintiffs to rest on the allegations in the pleadings; they must support their allegations with citations to specific facts in the record. *Celotex Corp.*, 477 U.S. at 324; *Insolia*, 216 F.3d at 598. Plaintiffs have completely failed to support their allegations of defective design.

The only evidence properly before the Court that might support Plaintiffs' claim for defective design is the April 2007 ATSB Report. While the Report discusses the GPWS computer and its potential role in the crash, it does not identify it as a probable "contributing safety factor" or even as an "other safety factor" that might have contributed to the crash. ATSB Report at 235–39. As was the case with Jeppesen, in the context of the entire ATSB Report and all evidence properly before the Court, the ATSB's conclusion that a GPWS computer *might* have contributed to the cause of the crash does not provide sufficient evidence to survive a motion for summary judgment. *Hudson*, 787 F. Supp. at 146 ("This lack of evidence positively connecting the defendants to the plaintiff's injury would render any verdict for the plaintiff a product of mere speculation, or a conclusion deduced by surmise and guess work.").

This analysis also applies to Plaintiffs' claims against Hamilton Sundstrand for negligent design. *See Gyllin*, 633 N.E.2d at 117 (stating, in a suit for negligence, "[w]hile circumstantial evidence is sometimes acceptable to prove causation, liability cannot be based on mere speculation, guess, or conjecture"); *see also Gillman v. Crown Equip. Corp.*, No. 95 C 1914, 1996 WL 464224, at *2 (N.D. Ill. Aug. 12, 1996) ("The analysis of the duty owed to a plaintiff, and alleged breach of that duty, is the same for both negligence and strict products liability claims."). Because Plaintiffs offer no evidence supporting the claim that Hamilton Sundstrand breached any duty to anyone or that the breach proximately contributed to the cause of the crash,

Plaintiffs' claims for negligent design fail.  *See Navarro v. Fuji Heavy Indus., Ltd.*, 117 F.3d

1027, 1030 (7th Cir. 1997) (affirming summary judgment for defendant on a negligent design

claim even though "[t]he defendant did not present *any* evidence in support of its motion.  It was

not required to."); *Phillips v. The Raymond Corp.*, No. 99 C 2152, 2006 WL 1156375, at *6

(N.D. Ill. Apr. 25, 2006) (granting summary judgment in a negligent design case where the

plaintiff provided "no evidence of proximate causation").

### C.    Failure to Warn

The Court also grants Hamilton Sundstrand and Mr. Hier's motion for summary

judgment as to Plaintiffs' claims for failure to warn.  Plaintiffs allege that Hamilton Sundstrand

"negligently failed to advise the purchasers of the GPWS to instead purchase an EGPWS" and

"negligently failed to advise the users and operators of the GPWS on the subject aircraft to

replace that GPWS with an EGPWS."  Doc. 218 at 5.  Similarly, Plaintiffs claim that Mr. Hier

"negligently fail[ed] to advise operators and users" that the GPWS was "unsafe and dangerous,"

and "negligently fail[ed] to advise the operators and users of the subject GPWS that the design of

that GPWS was outdated."  *Id.* at 10–11.

The Court finds that neither Hamilton Sundstrand nor Mr. Hier had any duty to warn

Transair of the existence of a superior product about which Transair was already aware.  "Illinois

does not require manufacturers to warn consumers about facts they already know."  *Todd v.

Societe BIC, S.A.*, 9 F.3d 1216, 1219 (7th Cir. 1993).  The evidence shows that Transair knew

that a superior product was available, Transair was required to upgrade to that superior system,

and Transair had begun outfitting its planes with the new computers.  This knowledge on its own

would be sufficient to defeat Plaintiffs' claims for failure to warn under Illinois law.  *Id*.

Additionally, Illinois law does not impose any duty to inform purchasers about defects that arise

after the date of sale. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1161–62, 2011 IL 110096, 353 Ill. Dec. 327 (2011); Restatement (Third) of Torts: Prod. Liab. § 10 (1998) (Reporters' Notes) (noting that Illinois has "reject[ed] the imposition of any post-sale duty to warn if the product was not defective at the time of sale"). In addition, Hamilton Sundstrand left the GPWS industry in 1993, seven years before Honeywell manufactured GPWS unit 2767.

Moreover, Plaintiffs offer no evidence that the MK VI GPWS computer design was actually defectively designed or dangerous. Without providing evidence of defect or danger, Plaintiffs cannot prevail on a claim against Hamilton Sundstrand or Mr. Hier for failure to warn. *See Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 112, 402 Ill. App. 3d 490, 342 Ill. Dec. 210 (2010) (noting that a plaintiff cannot prevail on a claim for negligent failure to warn where the product in question was not defectively designed). Therefore, Plaintiffs' claims against Hamilton Sundstrand and Mr. Hier fail.

## III. Honeywell and Hamilton Sundstrand's Motion for Summary Judgment

Additionally, Honeywell and Hamilton Sundstrand jointly move for summary judgment on all claims against them. Having already dismissed the claims against Hamilton Sundstrand, the Court will consider this motion and the underlying claims as they relate to Honeywell. The claims against Honeywell parallel the claims described above against Hamilton Sundstrand.

### A. Governing Law

Honeywell asserts that it would prevail under any law, but argue that Washington law applies because the allegedly tortious conduct—the design and manufacture of the GPWS unit—occurred exclusively in Washington. Plaintiffs, on the other hand, assert that there is no difference between Washington and Illinois law and that the Court should therefore apply the law of Illinois, the Court's forum state. The first step in this analysis is to determine whether

Washington law and Illinois law conflict on any relevant questions. *In re Air Crash Disaster Near Chi., Ill. on May 25, 1979*, 644 F.2d 594, 605 (7th Cir. 1981). Honeywell contends that Washington and Illinois law conflict because Washington enacted a tort reform act in 1981, Wash. Rev. Code Ann. § 7.72.010 *et seq.*, while Illinois relies on the common law. But Honeywell does not identify or cite any relevant issue on which the Washington statute and Illinois common law conflict. Nor does Honeywell identify any issue on which the choice of law between Washington and Illinois will impact the outcome of any claims against it. Because neither party identifies any actual conflict between Illinois and Washington law, the Court will apply the substantive law of the forum state, which in this case is Illinois. *See Barron*, 965 F.2d at 197; *Bridgeview Health Care Ctr., Ltd.*, 2014 IL 116389, at *6.

**B.    Defective or Negligent Design and Manufacture**

Like Hamilton Sundstrand, Honeywell seeks summary judgment on the claims for defective or negligent design and manufacture, arguing that there is no evidence that the GPWS unit contributed to the cause of the crash. Again, because Plaintiffs do not respond to Honeywell's statement of undisputed facts, all facts therein are deemed admitted. *Smith,* 321 F.3d at 683. Plaintiffs also fail to offer their own Rule 56.1 statement of facts. In its motion, Honeywell points out first that the evidence does not even show that the aircraft was equipped with a Honeywell GPWS computer at the time of the crash. While the aircraft was equipped with Honeywell GPWS unit 2767 in 2003, no GPWS unit was discovered in the wreckage and there is no maintenance log identifying the aircraft as having a Honeywell GPWS computer at the time of the accident. Moreover, Plaintiffs do not properly offer any evidence of a defect or failure by the GPWS computer. Because the aircraft's voice recorder was not functioning, it did not capture the crew's dialogue or any aural alert that a GPWS computer may have provided.

Further there are no surviving witnesses who might testify about the performance of a GPWS computer, let alone the effect that a GPWS computer had on the crew.

Additionally, Honeywell identifies several other potential explanations for the crash. As it relates to the GPWS, Honeywell contends that perhaps the flight crew manually overrode the GPWS, or ignored, failed to comprehend, or failed to properly respond to a GPWS alert. The ATSB could find no record of either pilot having been properly trained to use a GPWS computer or to be aware of controlled flights into terrain, which increases the likelihood that the crew would not have properly responded to a GPWS alert. Honeywell states that it is also possible that the GPWS malfunctioned—like the cockpit voice recorder and the flight data recorder—as a result of negligent maintenance, rather than defective design or manufacture. Alternately, Honeywell suggests that perhaps one of the inputs to the GPWS unit, such as the altimeter, malfunctioned and caused a working GPWS to fail to provide appropriate alerts. That the ATSB could not determine whether the altimeter was functional at the time of the crash supports this theory. Finally, Honeywell proposes that perhaps the plane's engines or flight controls failed, or that the crew did not increase torque and perform a pitch up maneuver. Honeywell asserts that absent any evidence of defect and with so many plausible alternative explanations for the crash, Plaintiffs have not met their burden to show a *prima facie* case that a defect in the GPWS unit probably contributed to the cause of the crash.

Plaintiffs, on the other hand, contend that the GPWS computer must have been defective because the flight crew did not pull up as the plane approached the South Pap ridge. Citing the ATSB Report, Plaintiffs allege that a functioning GPWS computer should have alerted the crew of the approaching terrain five seconds before impact. But the ATSB concluded, and Plaintiffs acknowledge, that an alert five seconds before impact would not have provided the flight crew

21

with enough time to avoid impact with the South Pap ridge. Plaintiffs assert that because the ATSB's analysis does not show that the pilots attempted to pull up in the final seconds before impact, the GPWS computer must not have provided any alert or must have provided so many false alerts that the flight crew reasonably ignored them.

Plaintiffs conclude that the GPWS computer's failure to properly alert the flight crew of approaching terrain constituted negligence and a defect in design or manufacture. Attached to their response, Plaintiffs offer affidavits of three pilots, who state that no "competent pilot" would ever "intentionally ignore a valid GPWS" alert, Docs. 226-2 ¶ 11, 226-3 ¶ 11, and that the pilot, Mr. Hotchin, "would never intentionally ignore a valid GPWS alert," Doc. 226-4 ¶ 12. However, as discussed above, these affidavits are not properly before the Court because they were not attached to a Local Rule 56.1 statement of facts. *See Gray*, 2013 WL 5497250, at *5. As a result, Plaintiffs have not properly provided the Court with any evidence to support their allegations. In essence, Plaintiffs argue, with no evidentiary support, that the GPWS must have been defective from the time it left Honeywell's control because the aircraft's flight crew did not respond as one might expect a competent, properly trained crew to react to a GPWS alert.

The Court finds that Plaintiffs have not met their burden to make a *prima facie* case that a defective GPWS unit probably contributed to the cause of the crash. Plaintiffs do not support their allegations with any evidence or properly dispute any of Honeywell's factual assertions. Even viewing the evidence in the light most favorable to Plaintiffs and drawing all inferences in Plaintiffs' favor, the Court finds that Plaintiffs' allegations are too speculative to survive a motion for summary judgment. As discussed above, the ATSB Report does not provide sufficient evidence to infer that a GPWS computer probably contributed to the cause of the crash.

Under Illinois law, the fact that the plane crashed does not raise a presumption of negligence and certainly does not warrant presuming that the GPWS computer was defective. *See Hurley v. Beech Aircraft Corp.*, 355 F.2d 517, 521 (7th Cir. 1966) (citing *Gen. Motors. Corp. v. Wolverine Ins. Co.*, 255 F.2d 8, 9 (6th Cir. 1958) for the proposition that "the happening of an accident raises no presumption of negligence"). While Plaintiffs are not required to disprove all other causal explanations, *Welge*, 17 F.3d at 211, Plaintiffs can withstand summary judgment only if they establish that a defect in the GPWS computer was *probably* responsible for their injuries, *Hudson*, 787 F. Supp. at 145–46. More than six years after bringing these suits, Plaintiffs respond to a motion for summary judgment by merely repeating their allegations, without properly putting before the Court any evidence of Honeywell's negligence or defect. Because Plaintiffs' claims against Honeywell are entirely speculative, the Court grants Honeywell's motion for summary judgment as to the claims for faulty design or manufacture. *Sybron Transition Corp. v. Sec. Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

C.    **Failure to Warn**

Additionally, Honeywell seeks summary judgment on Plaintiffs' claims for failure to warn. Plaintiffs allege that Honeywell "negligently failed to advise the users and operators of the GPWS on the subject aircraft to replace that GPWS with an EGPWS." Doc. 218 at 5. In support of these claims, Plaintiffs cite the ATSB report for the proposition that an EGPWS unit would have alerted the crew of the approaching terrain at thirty-two seconds and twenty-eight seconds before impact, providing the crew sufficient time to avoid the crash.

Plaintiffs' failure to warn claims against Honeywell fare no better than these same claims against Hamilton Sundstrand and Mr. Hier. Under Illinois law, Honeywell was under no duty to inform Transair of the existence of a product about which it was already aware. *See Todd*, 9 F.3d at 1219 ("Illinois does not require manufacturers to warn consumers about facts they already know."). The evidence shows that Transair was aware of the existence and superiority of the EGPWS for years prior to the crash, was required to install an updated warning system, and had planned to install TAWS units on its Metro 23 aircrafts within weeks of the crash.[7] Therefore, the Court grants Hamilton Sundstrand and Honeywell's motion for summary judgment.

## IV.    All Defendants' Motion for Summary Judgment Against Seven Plaintiffs

Additionally, all Defendants move for summary judgment with regard to the claims of seven Plaintiffs (representing six decedents), arguing that these claims are precluded by previous recoveries on behalf of those decedents against Transair in Queensland. Because the Court grants all first-party Defendants' motions for summary judgment, the Court need not rule on this motion. Therefore, the motion is terminated.

## CONCLUSION

For the reasons stated above, Jeppesen's [197], Hamilton Sundstrand and Mr. Hier's [186], and Hamilton Sundstrand and Honeywell's [188] motions for summary judgment are granted. Defendants' motion for summary judgment against seven plaintiffs [184] is moot in light of the Court's other rulings and is therefore terminated. Plaintiffs' motion to certify the

---

[7]    Honeywell and Hamilton Sundstrand also contend that Plaintiffs' state law claims are preempted by federal government occupation of the field of aviation safety and GPWS. Because the Court grants summary judgment in favor of Honeywell and Hamilton Sundstrand on all of Plaintiffs' claims, the Court need not decide this issue.

Court's opinion on the motion for remand [266] is denied as moot.   Judgment is entered in favor

of Defendants.

Dated: July 8, 2014

_____
SARA L. ELLIS
United States District Judge